**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 95-10133**
**Summary Calendar**

---

**BILLY WAYNE HORTON,**

**Plaintiff-Appellant,**

**VERSUS**

**JIM BOWLES, Sheriff of Dallas County, ET AL.,**

**Defendants-Appellees.**

---

Appeals from the United States District Court
For the Northern District of Texas
(3:94-CV-1744-R)

---

August 25, 1995

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges.

PER CURIAM:[1]

## BACKGROUND

Billy Wayne Horton, currently a Texas Department of Criminal Justice (TDCJ) prisoner, filed a 42 U.S.C. § 1983 complaint against Jim Bowles, the Dallas County sheriff, and other prison personnel,

---

[1] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

alleging that they failed to provide him with adequate protection during his incarceration at the Dallas County jail.[2] Horton complains about incidents which occurred in each of the six "tanks" where he was housed during his approximately six months of incarceration at the Dallas County jail.

Tank 2-P-7

Horton alleged the following incidents occurred while he was housed in Tank 2-P-7. Horton was assaulted by another inmate because of a disagreement about a sleeping area. Horton was threatened a few weeks later by the same inmate, and Horton reported it to an unidentified officer, who told Horton that he could not be removed from the tank unless the officer witnessed a fight. As the officer began to walk away, Horton pushed the inmate, who he alleged was about to assault him, and the officer removed Horton from the tank.

After the officer advised his superior of the incident, the lieutenant advised Horton that he would be moved. The officer did

---

[2] Horton alleged that he was transferred to the county jail because a bench warrant was issued due to a reversal of his criminal conviction. The magistrate judge stated in his report that Horton had been convicted of aggravated kidnapping and that his conviction had been affirmed on appeal. Despite his assertion that his conviction was reversed, Horton, an experienced litigator, alleged that he is entitled to relief under the Eighth Amendment and he has not alleged that he is a pretrial detainee. Horton remains incarcerated in a state prison facility. Further, staff counsel has previously worked on Horton's appeal from the denial of habeas relief in connection with a burglary conviction. In his pleadings, Horton alleged that he was to be released from jail on the burglary conviction in September 1994. Horton was incarcerated in the Dallas jail between July 1993 and January 1994. Thus, it appears that Horton was a "convicted" prisoner at the time that he was incarcerated in the Dallas County jail.

not adopt Horton's suggestion that the assaultive inmate be separated from the other inmates.

## Tank 12-S-14

Horton was transferred to Tank 12-S-14 and began having problems with inmate Brown. Another inmate had advised security that Brown was "assaultive" and a troublemaker. Brown was questioned by security and returned to the same tank, where he continued to threaten several persons. Horton alleged that Brown told inmate Gee to assault Horton, and Gee punched Horton several times in the mouth, requiring Horton to obtain five stitches in his lip. Horton was moved from the tank after he reported the assault. Horton admitted that he refused to identify Brown or Gee because he was afraid that he would be known as a "snitch," which would lead to further assaults. He later filed a grievance naming these inmates and requested disciplinary action against them, but no action was taken.

## Tank 5-P-7

Horton learned that inmate Bell, who was also housed on 5-P-7, had been previously placed in solitary confinement because of being involved in a fight. Bell had previously threatened Horton when he first arrived at the Dallas County jail, and Horton had reported the problem to security. Bell was questioned by security and then sent back to the same area. Horton alleged that Bell subsequently learned that it was Horton who reported him and Bell began to threaten Horton. However, both men were transferred from the tank and Bell did not have the opportunity to assault Horton.

3

<u>Tank 7-W-10</u>

Prior to his transfer to Tank 7-W-10, one of the officers called Horton a coward because he requested to be placed in protective custody. Horton was told by a supervisor that protective custody was no longer available.

While Horton was housed on Tank 7-W-10, an inmate stole Horton's coffee while he was sleeping. The inmate bragged that he would continue to steal from Horton, and Horton reported the inmate to security. After an investigation was conducted, Horton was surprised to learn that he was being transferred rather than the other inmate.

Horton made a knife-like instrument out of plastic and put a razor blade on the end of it in order to protect himself from other inmates. Prior to his transfer, the knife was discovered and a disciplinary charge was filed against Horton.

<u>Tank 5-P-14</u>

A few weeks after Horton was transferred to Tank 5-P-14, some inmates began threatening Horton and another inmate. After the other inmate was assaulted, Horton reported his fear that he would be assaulted to his supervisor. Horton was told that he was being transferred and he objected unless he could be placed in protective custody. He was again told that protective custody was no longer available.

<u>Tank 8-N-5</u>

Horton alleged that, on the first day that he was housed on Tank 8-N-5, another inmate was threatened and robbed by five inmates. On the next day, Horton was robbed of $5, punched, and told that he would be robbed of any further money that he received. Horton alleged that he wrote security about the threats and was not moved for "several" days. Horton's sister also called the jail about the threats without any results. Horton further alleged that the same inmates steal other inmates' food trays and that he sometimes receives only one meal a day.

Horton was allowed to proceed in forma pauperis (IFP). The magistrate judge recommended that Horton's complaint be dismissed as frivolous because his complaint did not support an arguable finding of deliberate indifference on the part of the defendants. Horton filed objections to the magistrate judge's recommendation and also filed a motion to file an amended complaint. The district court referred the objections and the motion to amend to the magistrate judge for disposition and on that same date, an order and judgment were entered, dismissing the complaint as frivolous. Horton filed notice of appeal on October 17, 1994. Horton's appeal was subsequently dismissed on January 23, 1995, for failure to file a brief.

On October 20, 1994, the magistrate judge granted Horton's motion for leave to file an amended complaint. In his amended complaint, Horton re-urged the allegations made in the first 34 paragraphs of his original complaint. He further amended his allegations concerning the incidents that occurred while he was housed in Tank

8-N-5. He added an additional allegation that "AS STATED ABOVE, PLAINTIFF ENDED UP BEING ASSAULTED AGAIN AFTER WARNING SECURITY OF THIS THREAT WHERE THEY REFUSED TO TAKE ACTION".

Horton also alleged in his amended complaint that Sheriff Bowles has a policy of being deliberately indifferent to the safety of the inmates housed in the county jail although he is aware of several deficiencies in the safety policy. Horton alleged that the policy is inadequate because it (1) did not provide for the segregation of assaultive inmates or the protection of non-violent inmates; (2) failed to require proper investigation of assaults or that disciplinary action be taken against violent inmates; and (3) did not provide for preventive action in response to reported threats.

The magistrate judge sent a questionnaire to Horton. In his responses to the questionnaire, Horton alleged that Sheriff Bowles was liable because of his failure to supervise his subordinates sufficiently, his refusal to talk to inmates or their relatives about problems, and his failure to perform his affirmative duty of running the jail safely. Horton alleged that Bowles acted with deliberate indifference because he refused to take any action despite being placed on notice of the violent conditions.

The magistrate judge filed a supplemental report, recommending dismissal of the complaint as frivolous. The district court adopted the magistrate judge's recommendation and dismissed the complaint.

Horton filed a motion for reconsideration of the order of dismissal within ten days. Horton also had submitted objections to

6

the magistrate judge's recommendation, which were not filed in the record until after the judgment of dismissal was entered. The district court denied the motion for reconsideration and Horton's objections to the magistrate judge's recommendation. Horton filed another notice of appeal.

## OPINION

"This Court must examine the basis of its jurisdiction, on its own motion, if necessary." Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987). A question arises as to the effect, if any, of Horton's October 17 notice of appeal on the district court's jurisdiction over the remaining proceedings in the case. A district court is divested of jurisdiction over all matters which are validly on appeal. See Dayton Ind. School Dist. v. U.S. Mineral Products Co., 906 F.2d 1059, 1064 (5th Cir. 1990).

Courts of appeal have jurisdiction from all final decisions of the district courts of the United States. 28 U.S.C. § 1291. A final decision, for the purposes of section 1291, "generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. This court has held that the appealability of an order normally depends on its effect, not merely its language as such." Frizzell v. Sullivan, 937 F.2d 254, 255 (5th Cir. 1991) (internal citations and quotations omitted). Finality is viewed under a "practical rather than technical construction, with the aim being to avoid piecemeal trial and appellate litigation". Id. (internal citations and quotations omitted).

7

Although the district court's order and judgment dismissing Horton's complaint appeared to be a "final, appealable, order," the district court's referral of Horton's motion to amend his complaint to the magistrate judge had the effect of re-opening the case. Horton's subsequent notice of appeal did not confer jurisdiction on the appellate court because there was no longer a final appealable order in the case. Therefore, the district court was not divested of jurisdiction and the case validly proceeded to judgment.

Horton argues that the magistrate judge's determination that the prison officials acted reasonably under the circumstances is erroneous based on the incidents that occurred in the first unit in which he was housed.

A district court may dismiss an in forma pauperis proceeding if the claim has no arguable basis in law and fact. Denton v. Hernandez, 504 U.S. 25, 31-32 (1992). A dismissal under 28 U.S.C. § 1915(d) is reviewed for an abuse of discretion. Id. at 33. Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994). However, not every injury "by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety". Id. at 1977. To prove an Eighth Amendment violation, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and the prison official's state of mind must be one of "deliberate indifference" to the inmate's health or safety. Id. A prison

8

official is deliberately indifferent if the official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and he draws that inference.  Id. at 1979. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including an inference from circumstantial evidence. . . . [A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id. at 1981 (citation omitted).

Although Horton alleged that the officer on Tank 2-P-7 walked away after his initial complaint of an assault by another inmate, Horton further alleged that he then immediately instigated a fight with the other inmate and the officer removed Horton from the area. Further, he alleged that after the officer reported the incident to his supervisor, Horton was transferred to another section. Horton's allegations reflect that the jail personnel took action upon becoming aware of facts indicating that Horton might he subjected to a substantial risk of harm, even if it was Horton who created the problem.  The allegations do not arguably reflect deliberate indifference on the part of jail personnel.

Horton next argues that the magistrate judge failed to consider properly the incident that occurred on Tank 12-S-14.  Horton argues that the limited investigation made by officials following complaints made by other inmates about a particular inmate was the result of deliberate indifference and that he was injured as a result of the indifference.

As stated above, Horton alleged that he was punched by inmate Gee at the direction of inmate Brown, after complaints had been made to security by other inmates against Brown. Horton admits that he was transferred after he reported the incident and that he refused to identify Brown or Gee as his assailants at that time. Horton's allegations do not reflect that prison officials were or should have been aware that Brown or Gee posed a substantial risk of harm to Horton prior to the occurrence of the assault. The officials acted reasonably in removing Horton from the area after the incident.

Horton further contends that the incidents that occurred while he was housed in Tank 8-N-5 reflect deliberate indifference on the part of the defendants. Horton argues that the magistrate judge failed to consider that he was assaulted twice while in that tank.

The magistrate judge determined that Horton's complaint alleged that Horton's assault was preceded by an assault on another inmate and not by a prior assault on Horton. The magistrate judge determined that Horton had affirmatively alleged that he was removed from the tank after he was assaulted.

Horton's original complaint did not allege that he was assaulted a second time prior to being transferred to another tank. In his amended complaint, Horton made the confusing allegation that "AS STATED ABOVE, PLAINTIFF ENDED UP BEING ASSAULTED AGAIN AFTER WARNING SECURITY OF THIS THREAT WHERE THEY REFUSED TO TAKE ACTION". There were no previous references to two assaults against Horton while he was housed on 8-N-5 in the amended complaint. However,

10

even assuming that Horton was assaulted twice, Horton's allegations that he was moved to another area within "several days" shows that the defendants were not acting with deliberate indifference to his safety.

Horton argues that the magistrate judge construed all of the facts in favor of the defendant, and, in particular, the fact that Horton had made a razor-knife instrument. Horton argues that he required the knife for protection because of the defendants' failure to make reasonable investigations of threats. The magistrate judge noted that, despite Horton's complaints of threats and assaults by other inmates, he admitted to initiating a fight with another inmate and to possession of a razor-knife. These allegations certainly give rise to an inference that Horton was not the passive non-violent inmate that he claims to be. The magistrate judge did not give an improper construction to these facts.

Considering all of the allegations in Horton's complaint and amended complaint, as well as his responses to the magistrate judge's questionnaire, it appears that Horton disagrees with the manner in which the defendants respond to complaints made about other inmates. However, his allegations do not reflect that the defendants acted with deliberate indifference to Horton's specific complaints or failed to take action to protect him from a substantial risk of harm. Horton's complaint does not support an arguable § 1983 claim based on an Eighth Amendment violation against any of the defendants in their individual capacities.

11

Horton argues that the policy implemented by Sheriff Bowles reflects his deliberate indifference to the inmates' safety. Horton argues that it was the sheriff's duty to insure that his subordinates run the jail correctly. Horton argues that the sheriff should have been placed on notice of the problems as a result of the large number of lawsuits and grievances filed alleging denial of medical care, safety, and the maladministration of the jail.

As a supervisory official, Sheriff Bowles may not be liable for the unconstitutional acts of his guards on a theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Id. at 304 (internal quotations not indicated).

In order to prove his claim of inadequate policy based on the sheriff's failure to properly supervise his subordinates, Horton would be required to show that the supervisory procedures employed are inadequate, that the sheriff was deliberately indifferent in adopting the procedures, and that the inadequate policy directly caused his injury. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). Generally, the "failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse. Then knowledge may be imputed to the

12

supervisory official, and he can be found to have caused the later violation by his failure to prevent it." Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986).

Horton's complaint reflects that the sheriff's subordinates responded to Horton's reports of threats or assaults against him by other inmates in a reasonable manner by transferring him away from the dangerous inmates. Horton's allegations do not support an arguable claim that the sheriff implemented or condoned a policy of deliberate indifference that posed a substantial risk of harm to Horton.

Horton argues that his case should have been consolidated with the other cases pending against the Dallas County jail. Horton sought in his motions for reconsideration to have his case consolidated with several consolidated suits by inmates against Sheriff Bowles alleging the denial of medical care, unsafe working conditions and denial of safety. The district court implicitly denied the motions to consolidate by denying the motions for reconsideration. Because Horton's complaint does not support an arguable § 1983 claim, his motions to consolidate were validly denied as moot.

**AFFIRMED.**